The Chancellor.
The plaintiff in error was sued in the court below upon a recognizance entered into by him, as a surety for D. Daly, conditioned for the good behavior of the latter for one year, pursuant to the directions of the second section of the title of the revised statutes relative to'disorderly persons. ( 1 R. S. 639.) The seventh section of the act of the 23d of January, 1833, merely adds to the class of those who are declared to be disorderly persons by the title of the revised statutes referred to, “husbands or parents who have actually abandoned their wives or children, in the city of New-York, without adequate support, or who neglect to provide for their wives or children according to their means.” But the proceedings against them are to be Li the manner prescribed by that title of the revised statutes. Although the last clause of the act of January, 1833, declares it to be the duty of the magistrate before whom the accused is brought for examination, to judge and determine from the facts and circumstances of the case whether his conduct amounts to such desertion or neglect to provide for his wife or children ; that is merely what the magistrate must of course do in the case of a person brought before him charged with being a disorderly person, mider the previous provisions of the revised statutes. It is only necessary, therefore, to inquire whether the provisions of that title of the revised statutes are constitutional ; and whether the decision of the magistrate tvas such a conviction as to render it conclusive against Daly, in all future proceedings, that the Joanna named in the conviction as his Avife was in fact such wife.
I have no doubt as to the constitutionality of the provisions of this title, or of the act of 1833, so far as they are brought in *78 question in this case. The constitution does not require an indictment in' all criminal cases; or even for all crimes which are infamous in their character. For the crime of petit larceny, which was always considered as' infamous, is expressly excepted from the section of the seventh article of the constitution, which requiresan indictment for capital offences, and all infamous crimes. jNor does the constitution require a trial by jury in every case oF a criminal nature. The provision of the constitution on that subject is, that the trial by jury in all cases in which it had been used at the time of the adoption of the new constitution, should remain inviolate foreverj (Const. Art. 7, § 2.) A provision substantially in the same form was contained in the former constitution of this state. ) But the statutes of the colony, previous to the adoption of the old constitution, and the statute subsequently thereto, expressly authorized the trial of petit larceny, and offences not infamous in their character, under the degree of grand larceny, without indictment, and without a jury, where the accused neglected to give security to appear at the next court of general sessions. (See Colonial Act of 1st Sept. 1744, and 1 Greenl. Laws N. Y. 422; 2 R. L. of 1813, p. 504, 507.)J And the first law authorizing a trial by jury in any case, in a court of special sessions, for such offences, was passed subsequent to the adoption of the present constitution.
^The summary proceedings against rogues and vagabonds, and disorderly persons, and particularly such as were able to support their wives and children, who should run away and leave them to the parish, or who should threaten to do so, formed a part of the common law of the colony of New-York, derived from the statute 7th Jac. 1st, ch. 4, and other previous' statutes, and was brought by our ancestors to this country as a part of the law of England, from whence they came. And in the revision of the laws, of 1788, when the legislature declared that none of the statutes of England should operate or be considered laws in this state, the provisions of the several English statutes on the subject of the proceedings against vagrants and disorderly persons were embodied in the act of February, 1788, for apprehending ■ and punishing disorderly persons. (2 Greenl. Laws, 52.)3This *79 statute continued in force until the adoption of the revised statutes ; and the substance of its provisions was incorporated in the title before referred to, with some extensions as to the class of persons embraced therein, so as to include common gamblers, rope-dancers, common showmen, &c. The former law is modified, however, by this title of the revised statutes, in favor of the accused, by permitting him to give security for his good behavior, and to be discharged from arrest, instead of being committed to the bridewell or house of correction for sixty days, or until the next court of general sessions, at hard labor, as authorized by the former statute. ¡And as the proceedings under this title of the revised statutes preserve all the rights of the accused which he before had, and give him some additional rights in a proceeding in which the right of trial by jury has never existed in this state, I have no doubt as to the constitutionality of the law, although it extends to some offences of the same nature and character, which were not embraced in the act of February, 1788.]
The fifth plea, setting up the unconstitutionality of the law, and charging that the recognizance was obtained by duress of imprisonment upon an illegal arrest under the same, was therefore bad. And the judgment of the court below upon the demurrer to that plea was not erroneous. The defendant in that court, therefore, could in no event be entitled to the costs of that plea, or of the argument of the demurrer to the same. (Williams v Wright, 1 Wend. Rep. 277; 2 R. S. 617, § 28.)
I think, however, the court of common pleas erred in refusing to receive evidence, on the part of the defendant, to show that the person who claimed to be the wife of Daly never was his wife, and that he had a wife and family in the city, who had lived with and been supported by him for the last six years. Even where the accused neglects to give bail, the conviction of him as a disorderly person, by the committing magistrate, is only conclusive evidence so far as to justify the commitment, and to lay the foundation for a further proceeding against the accused, by the court of general sessions of the peace". And the 8th section of the act makes it, for that purpose, merely pre *80 sumptive evidence of the facts contained therein, until disproved. ( 1 R. /S'. 639.) The justice of the supreme court who delivered the opinion in this case says, the statute authorizes the magistrate to deal with the accused in a summary way, “not to punish him for a crime committed, but to require him to give security that he will not commit a crime.” (1 Hill's R. 355.) But that court, in the press of business before it, has overlooked the fact, which distinctly appeared in the bill of exceptions, that the court of common pleas held the record of the conviction not only conclusive evidence that the accused had committed the offence charged against him, but also conclusive evidence against the surety in the recognizance that the person for whose support Daly had neglected to provide was in fact his wife. This decision of the common pleas was, I think, erroneous.
The old statute not only contemplated the commitment of the accused for the purposes of preventive justice, but for punishment also. For when convicted he was to be committed to the house of correction, and kept at hard labor for the time prescribed; and no provision was made for bailing him within that time. (1 R. L. of 1813, p. 114; The King v. Brooke, 2 Term Rep. 190.) That was therefore a commitment in execution ; and was not mere preventive justice, to guard against a repetition of the alleged offence. It is evident, however, that the legislature intended to change the law in this respect, and try the effect of preventive justice, to a certain extent. The revisers say, in their note to the second section, that the principiéis taken from the 9th section of the act to prevent gaming; and that they believe its application to the case of disorderly persons, in authorizing sureties for good behavior to be taken, instead of committing the offenders in the first instance, will be salutary. (3 R. B. 551, 2d ed.) And it will be seen that the commitment under the section of the acf of March, 1801, to prevent excessive and deceitful gaming, to which they refer, (1 R. L. of 1813, p. 154,) is unquestionably a commitment to obtain security only, as a means of preventive justice; and not a commitment in execution for the previous offence.
I think, therefore, that the record of the conviction by the jus *81 tice; in this case, for the purpose of justifying a commitment ■until surety for the good behavior of Daly should be given, if he refused to give such sufety voluntarily; was not evidence that the petson claiming to be his Wife actually stood in that relation to him, iti. a suit for an alleged breach of the recognizance. To entitle the plaintiffs in the court below to recover, it was necessary for them to show that Daly, after the giving of the recognizance, had neglected tti provide for his wife according to his means; as that allegation in the declaration was put in issue by the third and fourth pleas of the defendant. And for that ptirpose the conviction was not even prima facie evidence, much less ¡conclusive against the surety, that the person claiming Daly as her husband was his real wife, and that the woman to whom he had been married for six years was an adulteress.
Without inquiring, therefore, whether this is such a case as was contemplated'by the 7th section of the act bf January 1833, even if Daly had been lawMly married to the woman with whom he formerly cohabited in Nova Scotia, according to the laws of that country, the rejection of the defendant's evidence was an error for which the judgment of the court of common pleas should have been reversed. I shall therefore vote to reverse both judgments, except so much of the judgment of the common pleas as overrules the demurrer to the fifth plea. If the members of this court concur with with me in opinion, a venire de novo must be awarded; and the costs on the writs of error to the supreme court and to this court should abide the result of the suit.
Root, Senator, delivered ah opinion in fator of affirming the judgment of the supreme court. .'
On the question being put, “ Shall this judgment be reversed ?” all- the members of the court preseht who heard the argument; except Senators Rhoádes and Root, vote'd for reversal;
Judgment reversed, and venire de novo awarded;